UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CRIMINAL CASE NO. 21-66-DLB-CJS

UNITED STATES OF AMERICA                                                                    PLAINTIFF

v.                              MEMORANDUM ORDER
                          ADOPTING REPORT AND RECOMMENDATION

KYLE A. VANDERPOOL                                                                          DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon the March 31, 2023 Report and Recommendation ("R&R") of United States Magistrate Judge Candace J. Smith (Doc. # 70), wherein she recommends that the Court deny Defendant Kyle Vanderpool's Motion to Suppress (Doc. # 19). Defendant having filed Objections (Doc. # 71) and the United States having responded (Doc. # 72), the R&R is ripe for the Court's consideration. The Court has reviewed the Report and Recommendation and concludes that it is sound in all respects. For the reasons that follow, Defendant's objections are **overruled** and the R&R is **adopted** as the opinion of the Court.

I.      FACTUAL BACKGROUND

In July 2021, the Columbus, Ohio DEA office alerted the Cincinnati office that a drug suspect was traveling to Northern Kentucky for a suspected drug transaction. (Doc. # 70 at 1). Agents observed the suspect pick up Defendant Vanderpool at a location in Erlanger, Kentucky, and then go to an apartment in Newport. (*Id*. at 1-2). Vanderpool then traveled back to Cincinnati, dropped off a passenger, and returned to a Kroger in

1

Erlanger. (*Id*. at 2). According to agents, this behavior of picking someone up, driving a short distance, and then dropping them off is consistent with a drug transaction. (*Id*.). The DEA agents then contacted local police to make an arrest. (*Id*).

Officers Thornberry and Hartke responded to the call and followed Vanderpool. (*Id*). They observed that the vehicle he was driving was not registered to him, that a warrant existed for the owner's arrest, that the insurance status was suspect, and that Vanderpool twice failed to signal at a turn. (*Id*.). When stopped, officers noticed that he was furtively moving in the car, reaching behind the passenger seat, under the passenger seat, and in the center console of the vehicle. (*Id*.). Concerned for their safety, Officer Hartke ordered Vanderpool out of the car. (*Id*.). He refused and was removed from the vehicle by both officers. (*Id*.).

Vanderpool gave officers an Ohio driver's license and stated that he lived at the Erlanger address where he was previously seen for two years. (*Id*. at 3). Officer Hartke then brought his drug dog to the car for an open-air drug sniff. (*Id*.). Officer Hartke notified Officer Thornberry that the dog alerted to the presence of drugs in the vehicle, at which point Vanderpool was handcuffed and searched. (*Id*.). The officers then searched the car and found about $26,000 in cash and multiple packages of LSD, MDMA, DMT, and ketamine. (*Id*.). The officers arrested Vanderpool.

## II.   PROCEDURAL HISTORY

Vanderpool was indicted for possession with intent to distribute controlled substances. (*Id*.). A few months later he filed the Motion to Suppress currently under consideration, arguing that officers exceeded the scope of the initial traffic stop and impermissibly prolonged the stop when they paused to allow the drug dog to sniff the

2

vehicle. (*Id*. at 4). He also argued that the dog and its handler, Officer Hartke, were not sufficiently trained and certified, and therefore any alert was not sufficiently reliable to establish probable cause. (*Id*.). The United States responded, arguing that the officers had reasonable suspicion to stop the car and the "prompt use" of a dog sniff did not unlawfully extend the stop. (Doc. # 26 at 4-6).

Magistrate Judge Smith held a two-part evidentiary hearing at which the parties presented witnesses on the issue of the validity of the dog's sniff. (Doc. # 70 at 5-6). Officer Hartke testified to his training and experience with the drug dog. (*Id*.). Vanderpool presented an expert witness, Kyle Heyen, who disagreed with the training, standards, and proficiency of the dog and Officer Hartke. (*Id*. at 6-7). The United States presented a rebuttal witness who backed up the drug dog team's actions and training. (*Id*. at 9).

Following these hearings, the Magistrate Judge Smith prepared an R&R. Vanderpool filed objections (Doc. # 71), and the United States replied. (Doc. # 72).

### III.   REPORT AND RECOMMENDATION

Magistrate Judge Smith recommended that Vanderpool's Motion to Suppress be denied for two reasons: (1) the officers had reasonable suspicion to search Vanderpool's car beyond the original purpose of the traffic stop, and (2) the drug dog team was sufficiently trained and reliable to provide probable cause to search the car when the dog alerted to the presence of controlled substances.

In *United States v. Rodriguez*, the United States Supreme Court held that officers exceed the scope of a traffic stop and therefore violate the detainee's Fourth Amendment rights when they extend the time or scope of a stop beyond the time needed to address the purpose of the stop. 575 U.S. 348, 354-55 (2015). The Sixth Circuit appears to have

two approaches to defining what the scope of the stop is. One approach—outlined in *United States v. Salas*, an unpublished case—essentially states that the "original purpose" of a traffic stop includes the information and evidence from an ongoing investigation unrelated to the actual, possibly pretextual, reason for the traffic stop. 820 F. App'x 405, 406-07 (6th Cir. 2020). Applied to this case, that means that the purpose of the traffic stop would include investigation of suspected drug offenses, not just processing the ticket for failure to signal at a turn. The overall investigation that caused officers to follow Vanderpool would be considered part of the rationale for the stop. *Rodriguez* does not foreclose this interpretation because its underlying facts deal with officers whose only reason for stopping the car was a traffic violation. *See* 575 U.S. at 351-53. Under the second approach—outlined in *United States v. Whitley*—the rationale for the stop is limited to the actual infraction that was the catalyst for the stop. 34 F.4th 522, 530 (6th Cir. 2022). Only if sufficient circumstances arise to give the officers reasonable suspicion that some other criminal activity is afoot can they deviate from investigating the original infraction to pursue others. *Rodriguez*, 575 U.S. at 355.

Magistrate Judge Smith held that the search of Vanderpool's car was justified under either approach outlined by the Sixth Circuit. (Doc. # 70 at 10-17). Under the *Salas* approach, the underlying DEA investigation is considered part of the rationale for the stop, and therefore the drug dog sniff of Vanderpool's car does not run afoul of *Rodriguez*. (*Id*. at 12-13). Under the *Whitley* approach, officers would be limited to investigating Vanderpool's failure to use his turn signal and would not be able to investigate any drug activity without reasonable suspicion. (*Id*. at 13-14). Evaluating the officers' performance under this standard, Magistrate Judge Smith concluded that the officers had abandoned

4

the traffic stop (*id*. at 14-15), but that they had reasonable suspicion that Vanderpool was involved in other criminal activity, and therefore could investigate the car with a drug-sniffing dog. (*Id*. at 15-17). Officer Hartke and Thornberry were aware of the DEA's drug investigation and Vanderpool's implication with it and undertook to stop his car on a traffic violation so that the drug investigation could continue. (*Id*. at 15). When they stopped the car, Vanderpool was seen quickly reaching to different parts of the car, leading the officers to suspect that he was either accessing a weapon or hiding evidence. (*Id*. at 15-16). This additional evidence provided reasonable suspicion for the officers to suspect that he was engaged in further criminal activity. (*Id*. at 16). Vanderpool therefore lost under both approaches.

Magistrate Judge Smith also held that the drug dog team was sufficiently trained to provide probable cause to search Vanderpool's vehicle when the dog alerted to the smell of contraband coming from it. (*Id*. at 18-19). Although the Fourth Amendment prohibits unreasonable searches and seizures, a search is reasonable notwithstanding the lack of a warrant if it falls within a recognized exception. *United States v. Lyons*, 687 F.3d 754, 762-63 (6th Cir. 2012). The automobile exception—which allows officers to search a vehicle when they have probable cause to suspect criminal activity—is one such exception. *Id*. At the evidentiary hearing on the Motion to Suppress, the parties provided extensive testimony to the issue of whether the dog's alert was sufficient to establish probable cause.

Vanderpool argues that the dog did not alert to the smell of drugs, or if it did, the circumstances around the sniff made that alert unreliable. (Doc. # 70 at 17). His expert, Mr. Heyen, a consultant in the field, stated that he did not see the dog alert when he

5

viewed the bodycam footage from the stop. (*Id.*). The government noted in response that the bodycam will not catch every behavior or action that takes place at a traffic stop, and that a dog's unique alerts and behaviors can only be evaluated by its handler. (*Id.* at 17-18). As was discussed at the second hearing, a dog's alerts are unique to him, and a dog and handler train as a team. (Doc. # 66 at 14-15). Part of that training involves the handler learning the dog's unique alert signs. (*Id.*). The handler must study his dog and determine what it does when it detects a trained odor. (*Id.*).

Vanderpool's expert then generally attacks the dog's initial training, recurrent training, and department policies. (Doc. # 70 at 18-19). But as Magistrate Judge Smith pointed out, these opinions did not fit the case law. (*Id.* at 18). For example, Mr. Heyen repeatedly insinuated that an alert was not enough information to act upon, and that a dog had to actually indicate. (*Id.* (describing the difference between these two behaviors)). He also critiqued the dog's energy level and behavior during the search. (*Id.*). Yet Sixth Circuit caselaw clearly holds that an alert is sufficient to provide probable cause and a dog's accuracy rate is the yardstick for reliability. (*Id.*). Finally, his criticisms of the police department's training and use of drug dogs was largely based in his own opinions which were drawn from German police standards, not any recognized domestic organization. (*Id.* at 19). He even admitted that he did not join any of these organizations because he disagreed with their methodologies and that he had not been a certified law enforcement officer since 1991. (*Id.*). The government's rebuttal expert testified to the domestic standards and had law enforcement experience as recently as 2016. (*Id.*). Therefore, Magistrate Judge Smith found that the dog was sufficiently reliable to provide probable cause when it alerted to Vanderpool's vehicle. (*Id.*).

Based on this, Magistrate Judge Smith found that Vanderpool's Motion to Suppress failed on both arguments. The officers had reasonable suspicion to abandon the traffic stop, and the dog's alert provided probable cause to search the vehicle. She therefore recommended that the Motion to Suppress be denied.

## IV.   ANALYSIS

### A.   Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B), a district court judge may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition . . . of any motion." Under Federal Rule of Criminal Procedure 59(b)(1), following a magistrate judge's recommended disposition, a party has fourteen days to file "specific written objections to the proposed findings and recommendations." The district judge is required to "consider de novo any objection to the magistrate judge's recommendation," and "may accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C). Failure to object is considered waiver of the party's right to review. Fed. R. Crim. P. 59(b)(2).

Objections to a magistrate judge's recommended disposition must be "specific written objections to the proposed findings and recommendations." *Id.* This necessitates that "vague, general, or conclusory objections," will not be considered and are "tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001). Further, an objection that does "nothing more than state a disagreement with a Magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *United States v.*

7

*Shephard*, No. 5:09-cr-81-DLB-EBA, 2016 WL 9115464, at *1 (E.D. Ky. Sept. 18, 2016) (quoting *VanDiver v. Martin*, 304 F. Supp. 2d 934, 938 (E.D. Mich. 2004)). A specific objection "explain[s] and cite[s] specific portions of the report which [counsel] deem[s] problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (alteration in original) (quoting *Smith v. Chater*, 121 F.3d 709 (6th Cir. 1997) (unpublished table decision)).

**B.     Defendant's Objections**

Vanderpool raised objections to both prongs of Magistrate Judge Smith's analysis. He first attacks her conclusion that the officers were justified in expanding the scope of the stop and deploying the drug sniffing dog. Then he argues that the dog was not reliable enough to establish probable cause by an alert. He has already raised both arguments.

On the first prong, Vanderpool argues that the police could have gotten a warrant, an argument he already raised in his post-hearing brief. (*Compare* Doc. # 68 at 9 *with* Doc. # 71 at 7). Second, he makes two arguments based in *Arizona v. Gant*, which were also raised, nearly verbatim, in the same post-hearing brief. (*Compare* Doc. # 68 at 9 *with* Doc. # 71 at 6). Objections to the R&R are not an opportunity for the objecting party to recycle arguments already made to the Magistrate Judge, or a chance to re-litigate the Motion to Suppress. *Shephard*, 2016 WL 9115464, at *1. They are instead an opportunity for the objecting party to present specific objections to the reasoning or conclusions of the R&R. Therefore, these are not proper objections. Nevertheless, because the R&R does not specifically discuss *Arizona v. Gant*, this Court will briefly review the case.

Vanderpool cites *Gant* for the proposition that "a vehicle may only be searched without a warrant in two circumstances. First, when 'the arrestee is within reaching distance of the passenger compartment at the time of the search,' and, second, 'when it

8

is reasonable to believe the vehicle contains evidence of the offense of the arrest." (Doc. # 71 at 6 (quoting *Arizona v. Gant*, 556 U.S. 332, 351 (2009))). But this is not what *Gant* stands for; Vanderpool has taken one part of a full sentence and used it out of context. The actual holding of *Gant* is that "Police may search a vehicle *incident to a recent occupant's arrest* only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. at 351 (emphasis added). Vanderpool's misquotation of *Gant* directly contradicts his own correct characterization of the automobile exception in his post-hearing brief. (*See* Doc. # 68 at 6). There, he correctly stated that "[t]he automobile exception allows an officer [to] perform a warrantless search of a detained vehicle [if] the officer ha[s] probable cause to believe the vehicle contains contraband or evidence of criminal activity." (*Id*. (internal quotations omitted)).

In Vanderpool's case, the officers had probable cause to search his car because the drug dog alerted to the presence of contraband. The police were allowed to use the drug dog because they had reasonable suspicion—based on the DEA investigation and Vanderpool's secretive movements as officers walked up—to believe that he was involved in a drug crime. In other words, the initial reasonable suspicion justified the use of a drug dog, and the drug dog's alert established probable cause and justified a full search of the vehicle. Vanderpool's car was not searched incident to his arrest as contemplated by *Gant*; on the contrary, he was arrested *after* a search of his car showed contraband. (Doc. # 70 at 3). This objection is therefore inapposite.

Second, Vanderpool objects to Magistrate Judge Smith's conclusion that the drug dog's alert provided probable cause to search his car. (Doc. # 71 at 7-16). And yet again,

9

the majority of these objections are either copied and pasted directly from his post-hearing reply brief or are reused with light edits. As discussed above, these are not proper objections. For example, he discusses the alleged lack of an objectively verifiable alert by the dog (*compare* Doc. # 71 at 8, 12 *with* Doc. # 68 at 10-11, 13-14); concedes that an alert can provide probable cause but argues that a totality of the circumstances review makes it unreasonable in this case (*compare* Doc. # 71 at 11 *with* Doc. # 68 at 6-7, 11); quotes extensively from a Utah District Court opinion on the issue (*compare* Doc. # 71 at 12 *with* Doc. # 68 at 10); extensively regurgitates his expert's criticisms based on the bodycam video (*compare* Doc. # 71 at 9-11 *with* Doc. # 68 at 12-13); critiques the drug dog's level of past and recurrent training (*compare* Doc. # 71 at 13 *with* Doc. # 68 at 15); and argues that the maintenance training was insufficient (compare Doc. # 71 at 14-15 with Doc. # 68 at 17); all arguments taken verbatim or nearly verbatim from his post-hearing brief. Any additional material between these repurposed paragraphs merely restates the same argument in different words. Again, these are not qualifying objections.

Vanderpool understandably relies heavily on his expert's rather harsh criticisms of the drug dog's underlying and recurrent training since his initial training in 2020. But Magistrate Judge Smith concluded that these criticisms were without merit. (Doc. # 70 at 18-19). Her conclusion is entirely reasonable based on the fact that Mr. Heyen appears to be a law and a standard unto himself, with no law enforcement agencies adopting his standards and himself never joining any of the accepted organizations because he disagreed with their methods. (*Id*.). The standards he applied appeared to be entirely generated in his own mind and from his own preferences with some input from overseas practices, and never received the imprimatur of any recognized law enforcement

organization here in the United States.  (*Id*.).  Against this free-ranging opinion testimony, the United States presented the opinions of a recent law enforcement veteran with extensive experience in national standards, including the standards in which the drug dog was trained.  (*Id*.).

The Court agrees with Magistrate Judge Smith's evaluation of the merits of the testimony presented in the two-part hearing.  As she noted, "[u]ntil the Supreme Court or the Sixth Circuit requires K-9 units to indicate, or otherwise holds that a K-9 alert is not enough to establish probable cause, this Court must find . . . that the K-9 alert was sufficient." (Doc. # 70 at 19).  Having thoroughly reviewed Magistrate Judge Smith's R&R, the Court finds that it is sound in all respects.  It will therefore be **adopted** as the opinion of the Court.

**V.   CONCLUSION**

As Defendant has failed to raise any meritorious legal objections to Magistrate Judge Smith's R&R,

**IT IS THEREFORE ORDERED** that:

(1)   The Magistrate Judge's Report and Recommendation (Doc. # 70) is **ADOPTED** as the opinion of the Court;

(2)   Defendant's Objections (Doc. # 71) to the Report and Recommendation are **OVERRULED**;

(3)   Defendant's Motion to Suppress (Doc. # 19) is **DENIED**; and

(4)   This matter is scheduled for a **Scheduling Conference** on **June 1, 2023 at 10:00 a.m. in Covington.**

This 19th day of May, 2023.



K:\DATA\ORDERS\Covington Criminal\2021\21-66 Order Adopting R&R.docx